FILED
2017 Jun-29  PM 04:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# (SOUTHERN DIVISION)

**JAMES WALTHALL,**

**PLAINTIFF,**

**V.**                                                    **CIVIL ACTION NO.:**

**EQUIFAX INFORMATION
SERVICES, INC., EXPERIAN
INFORMATION SOLUTIONS, INC.
AND TRANSUNION LLC,**

**_JURY TRIAL DEMANDED_**

**DEFENDANTS.**

## COMPLAINT

COMES NOW the plaintiff, James Walthall ("Plaintiff"), by and through his undersigned counsel, and with knowledge as to his own acts, upon information and belief and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery, alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. § 1681, *et seq*. ("Fair Credit Reporting Act" or "FCRA").

2.      "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian,* Case No.: 1:10-cv-1064-AJT-TRJ (E.D. Va. March 18, 2011).

3.      Congress made the following findings when it enacted the FCRA:

**(1)** The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

**(2)** An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

**(3)** Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

**(4)** There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4). Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and

equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter."  15 U.S.C. § 1681(b).  Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'"  *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

4.    "Mixed files" create a false description of a consumer's credit history.

5.    A "mixed file" occurs when information that relates to Consumer B appears in Consumer A's credit file.

6.    Specifically, a mixed file "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report." *F.T.C. v. TRW, Inc.* 784 F. Supp. 361, 362 (N.D. Tex. 1991).[1]

7.    Mixed files are not a new phenomenon.  The defendants have been on notice of the existence of mixed files for over (30) years.  *See*

---

[1] Experian Information Solutions, Inc. is formerly known as TRW, Inc.

*Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

8.      In the 1990's the Federal Trade Commission ("FTC") filed a lawsuit against the nationwide consumer reporting agencies, including Equifax, Trans Union and Experian's predecessor TRW because of their failure to comply with the FCRA including the mixing of consumers' files.

9.      In the 1990's the Attorneys General of a number of states filed a lawsuit against Equifax, Trans Union and Experian's predecessor TRW because of their failure to comply with the FCRA, including the mixing of consumers' files.

10.     In 1991, TRW signed a Consent Order with the FTC.  To prevent the occurrence or reoccurrence of a mixed file, TRW agreed to use, for matching and identification purposes, a consumer's full identifying information, defined as full first and last name, full street address, zip code, year of birth, any generational designation and Social Security number.

11.     In 1992, Equifax signed an Agreement of Assurances with the Attorneys General of 18 states.  Equifax agreed it would maintain reasonable procedures to prevent mixed files by accepting and using a consumer's full identifying information (full first and last name, middle initial, full street

address, zip code, year of birth, any generational designation, and Social Security number) for matching and identification purposes.

12.     In 1994, Equifax signed a Consent Order with the FTC.  Equifax agreed it would follow reasonable procedures to assure the maximum possible accuracy of the information on a consumer's file including, but not limited to, procedures to detect logical errors prior to reporting information on a consumer's file, procedures to prevent mixing as a result of data entry by third parties when the third party requests a consumer's report, and procedures during a reinvestigation specifically designed to resolve consumer disputes related to a mixed file.

13.     In 1992, Trans Union signed a Consent Order with the Attorneys General of 17 states.  Trans Union agreed that it would maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files.  For example, procedures during the reinvestigation process include, assigning mixed file cases to Senior Investigators who, as appropriate, must pull all files related to the consumer, fully verify disputed information, make any changes, deletions or additions to correct the file and resolve the dispute, and prepare a summary of the problem to be filed with another department for corrective action.

14.     More recently, the defendants have been the subject of numerous state attorney general actions relating to mixed files.

15.     For example, the New York Attorney General filed charges and settled claims with the defendants over mixed files.[2]

16.     In 2012, Ohio Attorney General Mike DeWine initiated a multistate investigation of the defendants credit reporting practices, including the incidence of mixed files.  Thirty-one states participated in the enforcement action against the defendants, including Alabama, Alaska, Arizona, Arkansas, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Missouri, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, Tennessee, Texas, Vermont, and Wisconsin.  The enforcement action resulted in a six million-dollar ($6,000,000.00) settlement with Equifax, Experian and Trans Union.[3]  Further, the defendants promised to take steps to reduce the number of mixed files.

17.     Similarly, in 2014, the Mississippi Attorney General filed a lawsuit against Experian alleging "a lieutenant colonel in the Army National

---

[2] http://www.ag.ny.gov/press-release/ag-schneiderman-announces-groundbreaking-consumer-protection-settlement-three-national Last visited June 29, 2017.

[3] https://texasattorneygeneral.gov/oagnews/release.php?id=5092 last visited June 29, 2017.

Guard was denied credit and forced to buy numerous credit monitoring services due to Experian's failure to distinguish between his credit history and those of other people in his family."[4]

18.     On its blog, Experian issued a public statement about the lawsuit in the preceding paragraph entitled, "Why Mississippi Lawsuit Against Experian has no Merit."[5]

19.     Experian, Equifax and Trans Union recently settled the "meritless lawsuit" for over seven million dollars ($7,000,000.00).[6]

20.     Prior to this lawsuit, the defendants in this case are aware of each of the Federal Trade Commission and state attorney general enforcement actions[7] concerning or related to mixed files.

21.     On August 31, 2016, in *Steed v. Equifax*, Case No. 1:14-cv-00437-SCJ (ND Ga), the court acknowledged that the FCRA requires consumer reporting agencies to "reasonably 'reinvestigate' disputed items of

---

[4] http://www.nola.com/business/index.ssf/2014/06/mississippi_sues_credit-report.html last visited June 29, 2017.

[5] https://www.experian.com/blogs/news/2014/06/21/why-mississippi-lawsuit-against-experian-has-no-merit/ last visited June 29, 2017.

[6] http://www.ago.state.ms.us/ag-jim-hood-announces-that-experian-transunion-and-equifax-will-overhaul-credit-reporting-practices-and-end-deceptive-marketing-in-mississippi/ last visited June 29, 2017.

[7] Including the Alabama state attorney general enforcement action settled May 20, 2015. *See* http://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx Last visited June 29, 2017.

information in consumer report." (Doc. 100, p. 6).   The *Steed* court held credit inquiries are items of information.  *Id*. at 7.

22.    Prior to this lawsuit, each of the defendants was aware of the holding in *Steed.*

23.    Notwithstanding, mixed files continue to occur despite consumers' unique personal identifying information, such as Social Security numbers or date of birth, or both.

24.    Further, mixed files result in the disclosure of a consumers' most personal identifying and financial information absent the consumer's knowledge or consent, or both.

25.    The disclosure of consumers' credit files to third parties is recorded by the defendants as a request for the consumer's credit history.

26.    Inquiries are items of information contained in a consumer's "file," as that term is defined by 15 U.S.C. 1681(a)(g).

27.    Experian records and retains inquiries in consumers' files.

28.    Equifax records and retains inquiries in consumers' files.

29.    Trans Union records and retains inquiries in consumers' files.

30.    Defendants categorize inquiries as either a "hard" inquiry or a "soft inquiry."

31.    Hard inquiries are shared with third parties.

32.     Hard inquiries reduce a consumer's credit score.

33.     The number of hard inquiries in a twelve-month period may be a reason for a credit denial.

34.     Soft inquiries are shared with the consumer – not third parties.

35.      Soft inquiries do not have any impact on a consumer's credit score.

36.     Mixed files also result in the debt collection harassment of innocent consumers because debt collectors use CRA databases to "skip trace" debtors and locate the alleged debtor's address and telephone number.

37.     The defendants have been sued thousands of times for violations of the FCRA, including hundreds of cases per year wherein an allegation is made that the defendants mixed the plaintiff's file with that of another person.

38.     For example, in 2002, the jury in *Judy Thomas v. Trans Union LLC,* District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas with another consumer and failing to unmix them despite Ms. Thomas' disputes.  The jury awarded Ms. Thomas $5 million in punitive damages and $300,000 in actual damages. Despite the verdict, the defendants continue to mix consumers' files with other consumers' files.

39.     In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC,* Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $2.7 million in punitive damages and $219,000 in actual damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms. Williams' disputes.  Despite the verdict, Equifax continues to mix consumers' files with other consumers' files.

40.     In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC,* District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $18.4 million in punitive damages and $180,000 in actual damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Millers' disputes.  Despite the verdict, Equifax continues to mix consumers' files with other consumers' files.

41.     Over the last ten years, Experian has been sued hundreds of times by consumers whose files were mixed with a different consumer by Experian.

42.     Experian is sued over five hundred times per year wherein a consumer makes an allegation that Experian violated the FCRA.

43.     In the regular course of business, Experian maintains records of lawsuits filed against it.

44.    Experian's business records include the sections of the FCRA alleged to have been violated for each of the lawsuits filed against it in at least the five years preceding Plaintiff's Complaint.

45.    Further, Experian's records identify the claims made by the plaintiff, such as whether the plaintiff alleged Experian mixed the plaintiff's file or if the plaintiff is a victim of identity theft.

46.    In *Calderon v. Experian*, the court compelled Experian to produce a list of prior lawsuits concerning mixed files against it for the five (5) years preceding Plaintiff's complaint. Also, the court compelled Experian to produce discovery on the number of mixed file disputes it handled in the preceding five (5) years. *Calderon v. Experian*, Case 1:11-cv-00386-EJL-MHW, pp. 7-8 (D. Idaho Jun. 18, 2012).

47.    Indeed, Experian has produced the *Calderon* list in other lawsuits, including lawsuits filed by the undersigned.

48.    Similarly, Equifax and Trans Union have been sued thousands of times wherein a consumer makes an allegation that said defendants violated the FCRA.

49.    In the regular course of business, Equifax and Trans Union maintain records of lawsuits filed against it, and the lists are readily accessible to said defendants.

50.     Equifax has produced such a list to the undersigned.

51.     Indeed, "[e]vidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA).

52.     Experian has been ordered in single plaintiff FCRA lawsuits to produce discovery responses on the number of times it has been sued.

53.     Equifax has been ordered in single plaintiff FCRA lawsuits to produce discovery responses on the number of times it has been sued.

54.     Trans Union has been ordered in single plaintiff FCRA lawsuits to produce discovery responses on the number of times it has been sued.

55.     No less than three federal Courts of Appeal have held a consumer reporting agency violates § 1681e(b) and may be found to have willfully violated the FCRA when it mixes a consumer's file with another consumer.

56.     The FTC had specifically warned consumer reporting agencies to review their procedures when a mixed file case occurs.

57.     Despite federal law, Congressional mandate, federal and state government enforcement actions, thousands of consumer lawsuits, mixed files remain a significant problem for consumers, including Plaintiff.

58.     The sale of consumers' most private and sensitive personal and financial information is a multi-billion-dollar industry for the CRAs.

59.     Experian's parent corporation, Experian plc, reported $4.6 billion in revenue in 2016.[8]

60.     Equifax reported more than $3.1 billion in operating revenue in its annual report for year ending in 2016.[9]

61.     Trans Union reported over $1.7 billion in revenue for year ending 2016.[10]

## JURISDICTION & VENUE

62.     This Court has jurisdiction pursuant to 15 U.S.C. §1681p.

63.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

---

[8] https://www.experianplc.com/media/2733/experian-ar2016.pdf Last visited June 29, 2017.

[9] http://files.shareholder.com/downloads/ABEA-32806R/3995729349x0x934279/F65A3FAE-094A-47C7-AEA6-4C5D5060C371/2016_Equifax_Annual_Report.pdf   Last visited June 29, 2017.

[10] http://s21.q4cdn.com/588148537/files/doc_financials/2017/AR/TRU-2016-Annual-Report-Final.pdf Last visited June 29, 2017.

64. Plaintiff is an adult individual. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

65. Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio corporation with its principal place of business in California. Experian does business in this judicial district with its National Consumer Assistance Center (NCAC) located in Allen, Texas. Experian is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. §1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation. Experian outsources business services, including processing consumer disputes, to its vendor or sister company, or both, in Santiago, Chile.

66. Defendant Equifax is a Georgia corporation with its principal place of business in the state of Georgia. Equifax does business in this judicial district. Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. §

1681a(f) to third parties.  Equifax disburses such consumer reports to third parties of contract for monetary compensation.  Equifax outsources business processes, including consumer disputes to other countries, such as Mumbai, India. One of Equifax's dispute vendors is Intelenet.  Equifax also outsources business processing services to companies in the Philippines and Costa Rica.

67.    Defendant Trans Union is a Delaware corporation with its principal place of business in the state of Illinois.  Trans Union does business in this judicial district. Trans Union is a nationwide consumer reporting agency as defined by 15 U.S.C. § 1681a(f).  Trans Union regularly engages in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties.  Trans Union disburses such consumer reports to third parties of contract for monetary compensation. Trans Union outsources business processes, including consumer disputes to other countries, such as Mumbai, India.  One of Trans Union's dispute vendors is Intelenet.

68.    Experian, Equifax and Trans Union are referred to collectively as the "Defendants" throughout the complaint.

## FACTUAL ALLEGATIONS

69.    Defendants are regulated as "consumer reporting agencies" ("CRA") under the FCRA 15 U.S.C. § 1681a(f).

70.    Defendants sell millions of consumer reports (commonly referred to as "credit reports" or "reports") per day and also sell credit scores.

71.    Experian's primary business is the sale of consumer reports.

72.    Equifax's primary business is the sale of consumer reports.

73.    Trans Union's primary business is the sale of consumer reports.

74.    Pursuant to the FCRA, Defendants must follow reasonable procedures which assure that the reports they sell meet the standard of "maximum possible accuracy."   15 U.S.C. § 1681e(b).

75.    Defendants sold credit reports relating to Plaintiff to third parties with inaccurate and derogatory information.

76.    The inaccurate information includes, but is not limited to personal identifying, public record information, account and inquiry information (the "inaccurate information").

77.    The information is false because the information does not relate to Plaintiff.

78.    In other words, the information is inaccurate because it relates to a consumer other than Plaintiff.

79.   The inaccurate information harms Plaintiff's credit reputation because it does not accurately depict Plaintiff's credit history and creditworthiness.

80.   Experian prepared and issued credit reports concerning Plaintiff to third parties that included the inaccurate information.  Upon information and belief, Experian identified, or should've identified, Plaintiff's file as a "confirmed mixed file" as that term is defined by Equifax's settlement agreement with the New York Attorney General. Experian sold Plaintiff's credit report to third parties for transactions that did not relate to Plaintiff. Plaintiff disputed inaccurate information to Experian. Experian continued to report to third parties the inaccurate information.  Experian represented to Plaintiff that it removed his name from a preapproved credit offer mailing list. However, Experian sold Plaintiff's credit information to Chase Bank on or about September 21, 2016 and after notice from Plaintiff that inquiries by Chase Bank did not belong to him.

81.   Equifax prepared and issued credit reports concerning Plaintiff that included the inaccurate information. Upon information and belief, Equifax identified, or should have identified, Plaintiff's file as a "confirmed mixed file" as that term is defined by Equifax's settlement agreement with the New York Attorney General. Equifax sold Plaintiff's credit report to third

parties for transactions that did not relate to Plaintiff. Plaintiff disputed inaccurate information to Equifax. Equifax continued to report the inaccurate information to third parties. Plaintiff requested Equifax to provide him with the steps Equifax took when reinvestigating his dispute. Equifax failed to provide him with the steps Equifax took when reinvestigating his disputes. Based on its policies and procedures, Equifax intentionally failed to reinvestigate inquiries disputed by Plaintiff. Based on its policies and procedures, Equifax intentionally failed to delete inquiries disputed by Plaintiff. Equifax refused to reinvestigate inquiries disputed by Plaintiff after Equifax received notice of the *Steed* order referenced above.

82.     Trans Union prepared and issued credit reports concerning Plaintiff that included the inaccurate information. Upon information and belief, Trans Union identified, or should have identified, Plaintiff's file as a "confirmed mixed file" as that term is defined by Trans Union's settlement agreement with the New York Attorney General. Trans Union sold Plaintiff's credit report to third parties for transactions that did not relate to Plaintiff. Plaintiff disputed the inaccurate information to Trans Union. Upon information and belief, Trans Union continued to report to third parties the inaccurate information. Plaintiff requested Trans Union to provide him with the steps Trans Union took when reinvestigating his dispute. Upon

information and belief, Trans Union did not reinvestigate or delete any of the information disputed by Plaintiff.  Plaintiff requested Trans Union to provide him with his credit report.  Plaintiff provided Trans Union with proof of identification, including a copy of his driver's license, Social Security card and lease agreement.  On multiple occasions, Trans Union failed to send Plaintiff his credit report in response to Plaintiff's request.

83.   Despite Plaintiff's exhaustive efforts to date, Defendants have nonetheless deliberately, willfully, intentionally, recklessly and negligently repeatedly failed to perform reasonable reinvestigations and/or investigations of the above disputes as required by the FCRA, have failed to remove the inaccurate information, have failed to note the disputed status of the inaccurate information and have continued to report the derogatory inaccurate information about the Plaintiff.

84.   At all pertinent times hereto, Plaintiff was not responsible for the disputed debts.

85.   As of result of Defendants' conduct, Plaintiff has suffered actual damages in the form of denial of credit, lost credit opportunities, harm to credit reputation and credit score, out-of-pocket expenses, interference with Plaintiff's normal and usual activities, and emotional distress, including humiliation and embarrassment.

86.    At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

87.    At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

88.    Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff that are outlined more fully above and, as a result, Defendants are liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law for their violations of the FCRA.

### COUNT ONE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (against Experian)
### (Negligent Noncompliance with FCRA)

89.    Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

90.    Experian negligently failed to comply with the requirements of the FCRA.

91.    As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks damages in an amount to be determined by the jury.

92.    Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681o(a).

## COUNT TWO – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Experian)
### (Willful Noncompliance with FCRA)

93.    Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

94.    Experian willfully failed to comply with the requirements of the FCRA.

95.    As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks damages in an amount to be determined by the jury.

96.    Plaintiff also seeks statutory and punitive damages in an amount to be determined by the jury.

97.    Plaintiff requests attorney fees pursuant to 15 U.S.C. § 1681n(a).

## COUNT THREE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Equifax)
### (Negligent Noncompliance with the FCRA)

98.    Plaintiff    adopts    and    incorporates    the    above-numbered paragraphs as if fully stated herein.

99.    Equifax negligently failed to comply with the requirements of the FCRA.

100.   As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks damages in an amount to be determined by the jury.

101.   Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681o(a).

## COUNT FOUR – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Equifax)
### (Willful Noncompliance with the FCRA)

102.   Plaintiff    adopts    and    incorporates    the    above-numbered paragraphs as if fully stated herein.

103.   Equifax willfully failed to comply with the requirements of the FCRA.

104.   As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks damages in an amount to be determined by the jury

105.   Plaintiff also seeks statutory and punitive damages in an amount to be determined by the jury.

106.   Plaintiff requests attorneys' fees pursuant to 15 U.S.C. §1681n(a).

## COUNT FIVE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Trans Union)
### (Negligent Noncompliance with the FCRA)

107.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

108.   Trans Union negligently failed to comply with the requirements of the FCRA.

109.   As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks damages in an amount to be determined by the jury.

110.   Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681o(a).

## COUNT SIX – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Trans Union)
### (Willful Noncompliance with the FCRA)

111.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

112.   Trans Union willfully failed to comply with the requirements of the FCRA.

113.   As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks damages in an amount to be determined by the jury.

114.   Plaintiff also seeks statutory and punitive damages in an amount to be determined by the jury.

115.   Plaintiff requests attorneys' fees pursuant to 15 U.S.C. §1681n(a).

### JURY DEMAND

116.   Plaintiff requests a jury trial on all claims.

### PRAYER

Wherefore, Plaintiff prays for judgment against Defendants as follows:

On the First Claim for Relief:

1.   Actual damages to be determined by the jury; and

2.  Attorneys' fees and costs.

On the Second Claim for Relief:

1.  Actual damages to be determined by the jury;

2.  Punitive damages to be determined by the jury;

3.  Statutory damages to be determined by the jury; and

4.  Attorneys' fees and costs.

On the Third Claim for Relief:

1.  Actual damages to be determined by the jury; and

2.  Attorneys' fees and costs.

On the Fourth Claim for Relief:

1.  Actual damages to be determined by the jury;

2.  Punitive damages to be determined by the jury;

3.  Statutory damages to be determined by the jury; and

4.  Attorneys' fees and costs.

On the Fifth Claim for Relief:

1.  Actual damages to be determined by the jury; and

2.  Attorneys' fees and costs.

On the Sixth Claim for Relief:

1.  Actual damages to be determined by the jury;

2.  Punitive damages to be determined by the jury;

3.  Statutory damages to be determined by the jury; and

4.  Attorneys' fees and costs.

Respectfully submitted,

*/s/ Micah S. Adkins*
Micah S. Adkins (ASB-8639-I48A)
**THE ADKINS FIRM, P.C.**
2 Perimeter Park South
Suite 405 E
Birmingham, AL  35243
Telephone:  205.206.6718
Facsimile:   205.208-9632
Email:   MicahAdkins@ItsYourCreditReport.com